JOHN G. PALMER, as Administrator, etc., Appellant, v. THOMSON KINGSFORD, Respondent.

In 1854 a copartnership was formed between W. and two others under written articles. A., the wife of W., furnished half of his share of the capital pursuant to a verbal understanding and agreement with the parties to the written agreement that she should be a member of the firm and have a one-sixth interest therein. In 1867 W. died, leaving his widow and two minor children surviving him, one of whom thereafter died intestate, unmarried and without issue. The widow was appointed administratrix of her husband's estate and paid all his debts and liabilities. No settlement of the accounts of the administratrix was ever had or distribution of the estate made by her. There was no settlement of the copartnership accounts or withdrawal of his interest after the death of W. but the business was continued by the surviving partners. In 1876 the partnership was dissolved, the interest of A. in her own right, as guardian of her child and as administratrix of her husband, was fixed at $51,300.70; she took two notes executed by defendant, one for $34,200.50, for which she executed an assignment and transfer to him of her interest, individually and as administratrix; the other for $17,100.25, for which, as guardian, she assigned and transferred the interest of her child. These notes were renewed from time to time, and, in May, 1879, A., while con-

fined to bed by a sickness of which she subsequently died, gave to defendant the first note and certain bonds, and to her daughter the rest of the property, including the smaller note, which the latter received and retains. In an action brought by plaintiff, who, after the death of A., was appointed administrator of the estate of W. to recover the value of the note and bonds so given to defendant, *held*, that plaintiff was not entitled to recover, and this whether she was. in fact, a member of the firm or not.

(Argued January 16, 1889; decided January 29, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 1, 1887, which affirmed a judgment in favor of defendant entered upon the report of a referee.

This action was brought by plaintiff as administrator of the estate of Harmon L. Wilber, deceased, to recover from the defendant the value of a note made by him for $30,117.47, dated January 1, 1879, and, also, of six first mortgage sinking fund bonds of the Oswego Water Works Company of $1,000, which this complaint alleged belonged to the estate of his intestate and the defendant wrongfully took and appropriated to his own use on the 3d day of May, 1879.

The cause was put at issue and referred to a referee, and the material facts found by him are as follows : That on or about the 26th day of October, 1853, Thomas Kingsford and his son Thomson Kingsford, the defendant in this action, were the owners of the real estate, buildings and machinery therein, situate in Oswego, and of the business of manufacturing boxes, carried on in such buildings; that Ann Wilber was the step-daughter of Thomas Kingsford, and the half-sister of Thomson Kingsford, and on the 5th day of October, 1853, she married Harmon L. Wilber; that on April 14, 1854, Thomas Kingsford, Thomson Kingsford and Wilber made and executed in writing an agreement of which the following is a copy :

" Thomas Kingsford and Thomson Kingsford and Harmon L. Wilber, all of the city of Oswego, have joined themselves together as copartners under the firm name and style of T. Kingsford, Son & Co., for the manufacture of boxes for

the starch factory, or any other kindred business, and planing and splitting lumber and also buying and selling lumber of all kinds. Said copartnership is to commence on the 26th day of October, 1853, and to continue for the term of five years, with the understanding, however, that the same may be sooner terminated at the end of any of said years in case any of said partners shall give six months notice of their intention so to terminate it to the other members of said firm. Each member shall receive interest on the amount he puts into the capital; losses to be borne equally between the parties and profits to be divided in the same proportions. Neither member of the firm shall use the name or credit of the firm for any other purpose except for the business connected with the firm. It is understood that the said Harmon L. Wilber shall devote his entire time and energies to the business of the firm, and for which he shall receive from the firm the annual salary of six hundred dollars. It is understood that said Kingsfords shall devote only so much of their time to the said business as they may find necessary. Books of account shall be kept in which shall be entered all the transactions of said firm."

That at the time of making such agreement it was mutually understood and agreed, by and between the parties thereto and Ann Wilber, that she should contribute and put into the partnership, as a part of the capital, the sum of $1,500, and that she should be a member of the partnership and be interested therein equally with her husband in the one-third part thereof, each to be interested in and entitled to one-sixth part of such partnership and in such proportions to share in the profits and losses thereof.

That, pursuant to such understanding and agreement, Ann Wilber paid into the partnership, as part of the capital thereof, $1,500, her own money, given to her by Thomas Kingsford, and Harmon L. Wilber paid into the partnership, as a part of the capital therof, $1,500 loaned to him by Thomas Kingsford. That from entries in the books of the partnership it appears that the capital of the partnership was $10,500, of which Thomas Kingsford and Thomson Kingsford each paid in and

is credited with having paid in one-third part thereof, and Harmon L. Wilber, including the $1,500 paid in by his wife, is credited with having paid in one-third part thereof.

That by virtue of the agreement and the payment of the money into the partnership, Ann Wilber became a member of and interested in the partnership equally with her husband in the one-third part thereof, each being interested in and owning one-sixth part of the partnership and entitled to share in one-sixth part of the profits and losses thereof.

That the partnership carried on business up to the death of Harmon L. Wilber; that he died on or about the 20th day of January, 1867, and at the time of his death he left him surviving his widow, Ann Wilber, and two minor daughters, Julia A. and Virginia, his only heirs and next of kin.

That in February, 1867, Ann Wilber was duly appointed by the surrogate of Oswego county administratrix of the estate of her husband and duly qualified as such administratrix, and caused to be made and filed an appraisal of the estate, including her husband's one-sixth interest of the partnership which was appraised at $4,500, that all the claims and debts against and owing by the estate were settled and paid by the administratrix within the first year of her administration, and there are now no creditors of the estate; that no further proceedings were ever taken by the administratrix for the settlement of the estate, and there never was any accounting or settlement or distribution of the estate by the administratrix.

That in the month of February, 1867, Ann Wilber was duly appointed by the surrogate of Oswego county, the general guardian of her two minor daughters, and qualified as such, and she continued such guardian to the time of her death, hereinafter stated, she never rendered any account as such guardian.

That Virginia Wilber, while still a minor, on or about the 5th day of October, 1869, died intestate, unmarried and without issue, and leaving her surviving her mother and sister, her only heirs and next of kin.

That after the death of Harmon L. Wilber there was no

accounting, adjustment or settlement of his interest in the partnership between the administratrix of his estate and the surviving partners, and no withdrawal of such interest from the partnership, but the business of the partnership was continued and carried on by the surviving partners the same as before his death.

That in 1869 Thomas Kingsford died, and his one-third interest in the partnership became the property of the defendant, and from that time he was the owner of two-thirds interest in the partnership.

That after the death of Thomas Kingsford the partnership business was continued and carried on by the surviving partners until the first of January, 1876, when the partnership was dissolved, an inventory of the property of the partnership was made, by which it appeared that such assets and property at that time were of the value of $153,902.26; that Ann Wilber in her own right, and as guardian of her daughter, and as administratrix of the estate of her husband, had and made a settlement with Thomson Kingsford of the partnership business, and of her several interests therein, whereby it was settled and agreed by and between them that at that time the interest of Ann Wilber, in her own right and as guardian of her daughter, and the interest of the estate of her husband, being together a one-third interest in the partnership, were of the value and amounted to the sum of $51,300.75.

That thereupon, on the 1st day of January, 1876, Thomson Kingsford executed and delivered to her his two promissory notes for the $51,300.75, one being for $34,200.50, and one for $17,100.25, and in consideration thereof she executed and delivered to Thomson Kingsford two instruments in writing, one of which instruments was executed by her individually and as administratrix of the estate of Harmon L. Wilber, whereby, in consideration of $34,300.75, she sold, assigned and transferred to him all her right, title and interest in both of such capacities in and to the partnership assets and property, and the other of which instruments was executed by her as

guardian of Julia A. Wilber, whereby, in consideration of $17,100.25, as such guardian, she sold, transferred and assigned to him all the right, title and interest of Julia A. Wilber in and to the partnership property.

That after the settlement and during her life down to January 1, 1879, the defendant advanced to and paid for her divers sums of money in each year; and on or about the first of January in each year they had a settlement, and such money was deducted from the amount of the notes and new notes given by the defendant for the amounts still remaining unpaid, the smaller in amount of the renewal notes being made to the order of Ann Wilber, guardian.

That the last two notes so given were dated January 1, 1879, one thereof payable on demand to the order of Mrs. Ann Wilber for $30,117.47; and one payable on demand to the order of Mrs. Ann Wilber, guardian, for $20,948.53; that on the 27th day of April, 1879, Ann Wilber was attacked by sickness, of which she died on the eighteenth day of May following; that on the 3d day of May, 1879, while she was sick and confined to her bed, she made a distribution of the property by gifts, as follows:

She gave, surrendered and delivered to the defendant, with the intention that he should have and retain the same, his promissory note given by him to her, dated January 1, 1879, for $30,117.41, and also six bonds of the Oswego Water Works Company of $1,000 each, and worth a premium of about ten per cent, and the defendant received and has since retained the same. She also gave to the defendant a vacant lot in the city of Oswego of about the value of $2,000, and requested Julia A. Wilber to deed the same to the defendant when she should become of age. She gave and requested that there should be paid out of money she had on deposit in the savings bank in Oswego, $1,000 each to four parties designated by her. The rest of the said property she gave to her daughter, Julia A. Wilber, at the time delivering to her the note of the defendant for $20,948.53, dated January 1, 1879, and six of the bonds of the Oswego Water Works Company of $1,000 each, and

naming over the personal property and the real estate so given to her.

That at the time of making such gifts she was of sound mind and understanding, and fully competent, mentally, to dispose of her property, and to make the gifts.

That, upon the death of Harmon L. Wilber, his widow became the owner in her own right of one-third of his interest in the partnership, and his two daughters the owners, each of one-third, of the other two-thirds interest; and upon the death of Virginia Ann Wilber, became the owner of one-half of Virginia's interest, and Julia A. Wilber the owner of the other half; so that Ann Wilber, with her own interest in the partnership, upon the death of her husband and daughter, became and was the owner in her own right of three-fourths of the one-third interest in the partnership.

That the securities so given by the said Ann Wilber were considerably less than her share or portion of the property so held by her, and she had the right to give the same as a part of her own property; that it is not shown, nor does it appear, that such securities belonged to or were a part of the estate of H rmon L. Wilber so as to entitle the plaintiff to recover the same in this action.

That on September 29, 1882, John G. Palmer was appointed the administrator of the estate of Harmon L. Wilber, and qualified as such administrator, and commenced this action on September 30, 1882, a demand having been previously made by him of the defendant for the note and bonds, for which this action was brought, and the defendant refused to give them up.

The referee found, as matter of law, that Ann Wilber, though a married woman, could legally become a member of, and interested in, the partnership, that the plaintiff is not entitled to recover in this action the notes or bonds or the proceeds thereof; that the note and bonds given by Ann Wilber to the defendant were her property, and she had the right to give the same; and that the gifts of the same to the defendant were legal and valid, and by reason thereof the defendant became the owner thereof. And he ordered judg

ment in favor of the plaintiff, dismissing the complaint,
with costs.

*W. H. Kenyon* for appellant. Oral evidence was received
improperly, in violation of the rule prohibiting oral evidence
to contradict or vary the terms of a written agreement, and
cannot serve as the basis of decision herein. (*Colwell* v.
*Lawrence*, 38 N. Y. 71–73 ; *St. Nicholas Ins. Co.* v. *M. M.
Ins. Co.*, 5 Bos. 238–245 ; *Jackson* v. *Hart*, 12 Johns. 77–84;
*Jackson* v. *Roberts*, 11 Wend. 422–425 ; *Fenly* v. *Stewart*,
5 Sand. 101–106 ; *Graves* v. *Potter*, 11 Barb. 592–595 ; *Wake-
field* v. *Stedman*, 12 Pick. 562 ; *Lorner* v. *Meeker*, 25 N. Y.
361–363.) At the time the partnership was formed in 1853,
under the then existing law, Mrs. Wilber was prohibited from
forming a business partnership with her husband. (*In re
Boyle*, 1 Tucker, 4–7 ; *Lord* v. *Parker*, 3 Allen, 127.) The
finding of the referee and the General Term that the defend-
ant was guilty of no fraud in his transactions, as survivor of
the firm of T. Kingsford, Son & Co., was error in law.
(*State* v. *Phœnix Bk.*, 33 N. Y. 9–27 ; *Lomer* v. *Meeker*,
25 id. 361–363.) The frauds upon the estate, shown by
uncontradicted evidence, would require the opening of the
most formal settlement for their investigation. (*State* v.
*Phœnix Bk.*, 33 N. Y. 9–27.) The plaintiff was entitled
to an accounting. (*Case* v. *Abeel*, 1 Paige, 393–398; *Skid-
more* v. *Collier*, 8 Hun, 50–54 ; *Ames* v. *Downing*, 1 Bradf.
321–324 ; *Cheeseman* v. *Wiggins*, 1 T. & C. 595–597.) The
notes and bonds given were a part of the undistributed
and unsettled estate of Harmon L. Wilber, then in the
hands of Mrs. Wilber, as its administratrix, and no part
of it was hers in severalty to give. She could not give
it as hers. (*Powers* v. *Powers*, 48 How. 398 ; *Case* v.
*Abeel*, 1 Paige, 393–398 ; *Skidmore* v. *Collier*, 8 Hun, 50–54 ;
*Jewett* v. *Miller*, 10 N. Y. 402–405 ; *Van Epps* v. *Van Epps*,
9 Paige, 237–241 ; *Stiles* v. *Burch*, 5 id. 132–134 ; *Conger* v.
*Ring*, 11 Barb. 356–364 ; *Ten Eyck* v. *Craig*, 62 N. Y.
406–420 ; *Comstock* v. *Buchanan*, 57 Barb. 127, 139, 140.)

Independently of the circumstances, the fiduciary relation of Kingsford to Mrs. Wilber would have cast upon him the onus of proving the gifts voluntary. (*Marvin* v. *Marvin,* 3 N. Y. 192–203; *Sears* v. *Shafer,* 6 id. 268–272, 274, 275; 1 Barb. 408–414; *Bergen* v. *Udall,* 31 id. 9–26; *Forman* v. *Smith,* 7 Lans. 443–451; Kerr on Fraud, 161, 179, 182, 183: Tiffany & Bullard's Law of Trusts and Trustees, 481–483; *Lake* v. *Ramsey,* 33 Barb. 49–67, 70.) The release obtained from Julia, while ignorant of her property rights and Kingsford's wrong-doing, cannot be sustained. (*Bergen* v. *Udall,* 31 Barb. 9–27; *Marvin* v. *Marvin,* 3 N. Y. 192–203; *Sears* v. *Shafer,* 6 id. 268–272, 274, 375; 1 Barb. 408–414; *Ross* v. *Ross,* 6 Hun, 80–84; *Forman* v. *Smith,* 7 Lans. 443–447, 451; Kerr on Fraud, 164, 179, 182, 183; T. & B. on Trusts and Trustees, 481–483.) The referee erred in receiving in. evidence the conversation in regard to the formation of the partnership which made Mr. Wilber and his wife, both deceased, partners with the defendant, the witness. (Code Civ. Pro. § 829; *Chaffee* v. *Goddard,* 42 Hun, 147–150; *Holcom* v. *Holcom,* 95 N. Y. 316–326; *In re Kellogg,* 105 id. 648–651; *Simmons* v. *Henry,* 7 id. 262; *Merrill* v. *Brunner,* 9 id. 47–48; *Wheeler* v. *Kuntz,* id. 496–497; *Ehmann* v. *Schemerman,* 14 id. 705–707.) The referee erred in holding as matter of law, that Ann Wilber was a partner with her husband, she had no interest in the property she transferred to the defendant on the 1st day of January, 1876, but it all belonged to the estate of Wilber, and the securities taken by her on that sale belong to this plaintiff as administrator of Wilber. (*In re Boyle,* 1 Tucker, 4; *Haas* v. *Shaw,* 46 Am. R. 607; 91 Ind. 384; *Lord* v. *Davison,* 3 Allen, 127–131; Laws Mass., 1857, chap. 249; *Smith* v. *Gorman,* 41 Me. 405; *McKeon* v. *Frost,* 46 id. 239–377; *Chambovey* v. *Cagney,* 35 Super. Ct. 474; *Zimmerman* v. *Erhard,* 83 N. Y. 74.) Ann Wilber and the defendant must first show an honest, full and fair settlement with the dead partner, or his representative, and show that the remaining

assets belonged to them as the result of such settlement, before either can appropriate the assets to themselves, ignoring the estate. (Tiffany on Trusts, 484; *Nelson* v. *Haynor*, 66 Ill. 487; *Renfrow* v. *Pierce*, 68 id. 125; *Ogden* v. *Astor*, 4 Sandf. 311.) Under the well-settled rules of equity, the transactions cannot be allowed to stand. (*Tucker* v. *Dean*, 21 N. Y. Week. Dig. 519; *Casborne* v. *Barshaw*, 2 Beav. 76; Willard's Eq. Jur. 170; *Sears* v. *Shaffer*, 1 Barb. 408; 2 Seld. 274; *Marvine* v. *Marvine*, 3 N. Y. 191, 192, 202, 203; *In re Welsh*, 1 Redf. 238; *Clark* v. *Fisher*, 1 Paige, 176; *Marsh* v. *Tyrell*, 21 Hagg. Ec. 87; *Billinghunt* v. *Vickers*, 1 Phil. 193; *Peak* v. *Ollatt*, 2 id. 323; *Griffin* v. *Robins*, 3 Madd. 19; *Huguerino* v. *Basely*, 14 Vesey, 287; *Vaughun* v. *Lord*, 5 id. 48; *Dent* v. *Bennett*, 7 Swin. 546; *Gibson* v. *Jeyes*, 6 Vesey, 278; *Barrow* v. *Rhinelander*, 2 Johns. Ch. 556; *Whelan* v. *Whelan*, 3 Cow. 572; *Evans* v. *Llewellin*, 1 Cox, 331.

*S. C. Huntington* for respondent. The partnership between Thomas Kingsford, Thomson Kingsford, Harmon L. Wilber, and Ann Wilber, his wife, could be and was legally formed in 1854. (3 R. S. [7th ed] 2335, 2339; *Young* v. *Winslow*, 21 Daily Reg. 117; *Armitage* v. *Mace*, 48 N. Y. Super. Ct. 16; *Zimmerman* v. *Erhard*, 83 N. Y. 74, 76; 58 How. Pr. 11; *Moore* v. *Huntington*, 7 Hun, 425; *Graff* v. *Kinney*, 37 id. 405; *Bitter* v. *Rathman*, 61 N. Y. 512; *Scott* v. *Conway*, 58 id. 619; *Bodine* v. *Killeen*, 53 id. 93; *Seymour* v. *Fellows*, 77 id. 178; *Abbey* v. *Deyo*, 44 id. 344; *Rowe* v. *Smith*, 45 id. 230; *Knapp* v. *Smith*, 27 id. 278; *Frecking* v. *Rolland*, 53 id. 422; *Krum* v. *Beach*, 96 id. 398; *McLure* v. *Lancaster*, 58 Am. Rep. 259, 261, note; 24 S. C. 273; *Boyle Estate*, 1 Tuck. 4; *Knott* v. *Knott*, 6 Oregon, 142; *Plop* v. *Thomas*, 6 Mo. 157; *Wilson* v. *Loomis*, 55 Ill. 352; *In re Kinkead*, 3 Biss. 405; 7 Bank's Reg. 437.) Both of said Kingsfords and said H. L. Wilber fully ratified, during the life of each, the said executed agreement, that said Ann should be such partner, and neither of them nor their repre-

sentatives, prior to 1883, ever sought to disaffirm said agree-
ment, or to controvert the right of said Ann to be such
member. Each of them is estopped from repudiating such
right. (Danforth & Wickes' Ct. of App. Dig. 388–390;
*Wilcox* v. *Howell*, 44 N. Y. 398; *Royce* v. *Watrous*, 73 id.
597; *White* v. *Ashton*, 51 id. 280; *Short* v. *Home Ins. Co.*,
90 id. 16; *Moore* v. *Huntington*, 7 Hun, 425; *Andrews* v.
*Ætna Life Ins. Co.*, 85 N. Y. 334; *Shapley* v. *Abbott*, 42 id.
443; *Kidder* v. *Horrobin*, 72 id. 159; Story's Equity Jur.
[11th ed.] §§ 1366–1408; Willard's Equity [Potter's ed.] 634,
640; Perry on Trusts [2d ed.] §§ 51, 195, 624–684; *McLure*
v. *Lancaster*, 58 Am. Rep. [24 S. C.] 259, 261, note; *Stabell*
v. *Slingleff*, 22 Me. 132; *Glidden* v. *Taylor*, 16 O. St. R. 509;
*Penn* v. *Whitehead*, 17 Gratt. 503; *Swazey* v. *Antrum*, 24 O.
St. R. 95; *Rankin* v. *West*, 25 Mich. 195; *Chew* v. *Beal*, 13 Md.
348, 360; *McCampbell* v. *McCampbell*, 2 Lea, 661, 664; *Moore*
v. *Page*, 111 U. S. 117; *Rogers* v. *Murray*, 18 N. Y.
State Rep. 598; *Worm'ey* v. *Wormley*, 98 Ill. 544, 553;
*Loomis* v. *Brush*, 36 Mich. 40, 46; *Sims* v. *Rickets*, 35 Ind.
18, 180, 193; 9 Am. Rep. 679; *Boyle Estate*, 1 Tuck. 4;
*Simmons* v. *McElwain*, 26 Barb. 419; *Knott* v. *Knott*, 6
Oregon, 142; *Wi'der* v. *Brooks*, 10 Minn. 50; *Plop* v. *Thomas*,
6 Mo. App. 157; *Wilson* v. *Loomis*, 55 Ill. 352; *How Exr.* v.
*How*, 70 Ind. 135, 139; *Lord* v. *Davis*, 3 Allen [Mass.] 131;
*Harris* v. *Brown*, 30 Ala. 401, 402; *In re Kinkead*, 3 Biss. 405;
*Rich* v. *Tubbs*, 41 Cal. 34; 7 Bank. Reg. [U. S. Ct.] 439;
*Thomas* v. *Standeford*, 49 Md. 181, 184; *McCowan* v.
*Donaldson*, 128 Mass. 169; *Leggett* v. *Hyde*, 58 N. Y. 272.)
The plaintiff, as such administrator, has no other or greater
interest in the estate of H. L. Wilber, and no other or
greater authority than said H. L. Wilber had at the time of
his death, to contest the said partnership of Ann Wilber,
or to controvert her right to a one-sixth interest in said firm
property. (*Yale* v. *Baker*, 2 Hun, 468; *Sage* v. *Woodin*,
66 N. Y. 578; Story's Eq. Jur. [11th ed.] chap. 24, §§ 960,
964, 973, 974 a; 976, 977, 978, 979, 980, 982, 1366, 1408;
*Everit* v. *Watts*, 10 Paige, 82; *Noyes* v. *Blakman*, 3 Sandf.

531; *Bitter* v. *Rathman*, 61 N. Y. 512; *In re Mason*, 98 id. 527; *Reitz* v. *Reitz*, 80 id. 558; *Shuttleworth* v. *Winter*, 55 id. 625; Perry on Trusts [2d ed.] §§ 51, 195, 624–687; *Martin* v. *Funk*, 75 N. Y. 140; *Young* v. *Young*, 80 id. 438; *Willis* v. *Smyth*, 91 id. 297; *Barry* v. *Lambert*, 98 id. 300.) Harmon L. Wilber, at the time of his death, in 1867, was, and should, in equity, be held to be, estopped and precluded from contesting the said one-sixth of his wife in said firm, as such partner. (D. & W., Ct. App. Dig. 388, 390; *Wilcox* v. *Howell*, 49 N. Y. 398; *Royce* v. *Watrous*, 73 id. 597; *White* v. *Ashton*, 51 id. 280; *Short* v. *Home Ins. Co.*, 90 id. 16; *Moore* v. *Huntington*, 7 Hun, 425; *Andrews* v. *A. L. Ins. Co.*, 85 N. Y. 334; *Shapley* v. *Abbott*, 42 id. 443; *Kidder* v. *Horrobin*, 72 id. 159.) As to the rights of said Ann Wilber, and of Julia A. Palmer as such administratrix, said written agreement was, and is, "*res inter alios acta.*" (*Mosher* v. *Hotchkiss*, 3 Keyes, 161, 165; *Rawles* v. *Deshler*, id. 572, 580; *Sweet* v. *Barney*, 23 N. Y. 335, 340, 341; *Gelston* v. *Hoyt*, 13 Johns. 561–581; 2 Whart. Ev. § 760; 1 id. § 175; Stark. Ev. [10th ed.] 36, 81, 85.) The said Ann Wilber, January 1, 1876, as guardian and administratrix, was the legal owner of, and had a legal right to control, settle, assign, and dispose of as she did, all of the interest (if any) of the estate of said Harmon L. Wilber, in said partnership property. (*Yale* v. *Baker*, 2 Hun, 468; *Sage* v. *Woodin*, 66 N. Y. 578; *Thompson* v. *Thompson*, 1 Brad. 24; *Hasbrouck* v. *Hasbrouck*, 27 N. Y. 182, 186; Code, §§ 446, 447; Parsons on Partnership [2d ed.] top paging p. 522, star paging p. 511; *Ogden* v. *Astor*, 4 Sandf. Supr. Ct. 312; *Young* v. *Hill*, Abb. N. C. 870; Abb. Trial Ev. 463; *Wharton* v. *Anderson*, 28 Minn. 301, 305; *Young* v. *Hill*, 67 N. Y. 162, 175; *Troop* v. *Haight*, Hopk. Ch. 272; Story's Equity Jur. §§ 523, 527; *Consequa* v. *Fanning*, 3 Johns. Ch. 587; *Phillips* v. *Belden*, 2 Edw. Ch. 1; *Champion* v. *Joslyn*, 44 N. Y. 653, 656; *Lockwood* v. *Thorn*, 18 id. 285; *Wiggins* v. *Burkham*, 10 Wall. 129; *Harley* v. *The Eleventh Ward Bank*, 76 N. Y. 618; 48 Barb. 303; *Beal* v. *New Mexico*, 16 Wall. 451, 535;

*United States* v. *Walker,* 109 U. S. 258, 261; *Wilson* v. *Arnck,* 112 id. 83–87; *Starkesley* v. *Mansfield,* 90 N. Y. 227; *Robins* v. *McClure,* 100 id. 340; *Chapin* v. *Libbets,* 33 id. 289; *Petition of Livingston,* 34 id. 556; *Cranmer* v. *Burton,* 60 Barb. 216.) If, as plaintiff contends, the said Ann Wilber never was, and never could have been, a joint partner in, or member of said firm during the life of her husband, H. L. Wilber, such fact cannot avail plaintiff, nor enable him, under the proofs and findings, to maintain either an action of trover, or for an accounting. (*In re Bostwick,* 4 Johns. Ch. 100; *Field* v. *Schieffelin,* 7 id. 150; *Tuttle* v. *Heavy,* 59 Barb. 334; T. &' B. on Trusts, 643; *Ogden* v. *Astor,* 4 Sandf. 311; *Sage* v. *Woodin,* 66 id. 578; *Yale* v. *Baker,* 2 Hun, 468.) Julia A. Palmer as administratrix of the estate of her mother, and in her own right, could alone maintain an action to determine all the rights in controversy. (*Yale* v. *Baker,* 2 Hun, 468; *Sage* v̇. *Woodin,* 66 N. Y. 578; Code, §§ 2605–2610; *Gottsberger* v. *Taylor,* 19 N. Y. 150; affirming 5 Duer, 556; *Scofield* v. *Churchill,* 72 N. Y. 565; *Baucus* v. *Stover,* 89 id. 1; *Harrison* v. *Clark,* 87 id. 572; *Richardson* v. *West,* 80 id. 139; *Thompson* v. *Whitney,* 75 id. 4, 23; *Woerz* v. *Radermacher,* 6 N. Y. S. R. 684; *Boyle* v. *St. John,* 28 Hun, 454; *Scofield* v. *Adriance,* 1 Dem. 196; *Greenland* v. *Wandell,* 5 N. Y. S. R. 835; *Hood* v. *Hood,* 19 Hun, 300; *In re Estate of Fithian,* 25 Week. Dig. 64; *Estate of Van Dyke,* 7 N. Y. S. R. 710; *Matter of Wing,* 3 id. 294; *In re Petition of Martin,* 20 Week. Dig. 236; *Herbert* v. *Stevenson,* 3 Dem. 236; *Crawford* v. *Crawford,* 5 id. 38; *In the Matter of Fithian,* 5 id. 307; *In the Matter of Van Dyke,* 5 id. 332; *Haight* v. *Brisbane,* 100 N. Y. 219; *Brown* v. *Carrington,* 4 Redf. 146; *In re Estate of Roxana Bacon,* 24 W. D. 194; *Hood* v. *Hood,* 85 N. Y. 561; New Code [Bliss], § 388; Old Code, § 97; *Everett* v. *Everett,* 41 Barb. 385, 394, affirmed in Court of Appeals; *McTeague* v. *Coulter,* 38 N. Y. Supr. Ct. 208; *Still* v. *Holbrook,* 23 Hun, 517; *Loder* v. *Hatfield,* 71 N. Y. 92; *People* v. *Tweed,* 63 id. 202; *Peters* v. *Delaplaine,*

49 id. 362; *McCotter* v. *Lawrence,* 4 Hun, 107; *Hubbell* v. *Medbury,* 53 N. Y. 98; *Castner* v. *Walrod,* 25 Am. R. 369, (83 Ill. 171); *Wright* v. *Paine,* 34 id. 24; 62 Ala. 340; *Atwater* v. *Fowler,* 1 Edw. Ch. 417; *Chubbuck* v. *Vernam,* 42 N. Y. 432; *Sage* v. *Woodin,* 66 id. 578; Story's Equity Jur., §§ 133, 146, 148, 149, 151–157.) The release and discharge executed by Julia A. Palmer, and witnessed by her husband, on the 5th day of July, 1879, is valid and binding. (*Ballou* v. *Ballou,* 18 N. Y. 620, 630.) Ann Wilber, being on the third day of May, 1879, the absolute owner, in her own right, of each of the bonds; and as on said day, she gave the same to the defendant, said action of trover cannot be maintained by reason of defendant having converted any one of them to his own use. (*Yale* v. *Baker,* 2 Hun, 468; *Sage* v. *Woodin,* 66 N. Y. 578; *Ogden* v. *Astor,* 4 Sandf. 311.) The legal representative of Ann Wilber is alone entitled to contest or set aside the settlement. (*Beal* v. *New Mexico,* 16 Wall. [U. S.] 535, 541; 1 Williams on Executors [4th Am. ed.] 781; *United States* v. *Walker,* 109 U. S. 258, 261; *Wilson* v. *Amek,* 112 id. 83, 86, 87; *Yale* v. *Baker,* 2 Hun, 468; *Sage* v. *Woodin,* 66 N. Y. 578; *Ogden* v. *Astor,* 4 Sandf. Supr. Ct. 311; *Paff* v. *Kinney,* 5 id. 380; *Hasbrouck* v. *Hasbrouck,* 27 N. Y. 182; Code, §§ 2605–2610; *Gottsberger* v. *Taylor,* 19 N. Y. 150; affirming 5 Duer, 566; *Scofield* v. *Churchill,* 72 id. 565; *Harrison* v. *Clark,* 87 id. 572; *Kelly* v. *West,* 80 id. 139; *Townsend* v. *Whitney,* 75 id. 425; *Woerz* v. *Rademacher,* 6 N. Y. S. R. 686; *Boyle* v. *St. John,* 28 Hun, 454; *Scofield* v. *Adriance,* 1 Dem. 196; *Greenland* v. *Waddell,* 5 N. Y. S. R. 835; *Hood* v. *Hood,* 19 Hun, 300; *In re Estate of Fithian,* 25 W. D. 64; *Estate of Van Dyke,* 7 N. Y. S. R. 710; *Matter of Wing,* 3 id. 294; *In re Petition of Martin,* 20 W. D. 235; *Herbert* v. *Stevenson,* 3 Dem. 236; *Crawford* v. *Crawford,* 5 id. 38; *In the Matter of Fithian,* 5 id. 307; *In the Matter of Van Dyke,* id. 332; *Haight* v. *Brisbin,* 100 N. Y. 219; *Brown* v. *Kerrigan,* 4 Redf. 146; *In re Estate of Roxana Bacon,* 24 W. D. 194; *Hood.* v. *Hood,* 85 N. Y. 561.)

EARL, J. The finding of the referee that Ann Wilber was a member of the firm of T. Kingsford, Son & Co., is assailed by the plaintiff, and we do not deem it important to determine whether that finding was justified by the evidence and the law or whether any illegal evidence was taken relating thereto, because we think the result must be the same whether she was a member of that firm or not. If the referee was right in his finding and she was a member of the firm, then upon the death of her husband she and the Kingsfords became the surviving partners and had the right to the possession and control of the partnership property, and the legal title thereto was vested in them. By mutual consent they carried on the partnership business until the death of Thomas Kingsford in 1869, and then she and Thomson Kingsford, as surviving partners, carried it on until the first day of January, 1876, when she settled with him and sold and transferred to him the entire assets remaining of the firm. In consequence of the death of her daughter Virginia, she became and was the owner of one half of her husband's interest in the firm, which, together with her one-sixth interest, gave her three-quarters of the one-third interest which stood on the books of the firm in his name. In this action the plaintiff cannot assail the settlement, and transfer which was made on the first day of January, 1876, because the note which he seeks to recover in this action is part of the consideration given upon that transfer, and by claiming the same he affirms the settlement and transfer, and becomes bound thereby. At the time of that settlement, she transferred the interest which her daughter had in the firm as the only child of Harmon L. Wilber; she also transferred her individual interest which she owned as a member of the firm or as the widow of the deceased, and also all the right and title which she had as administratrix. The whole one-third of the firm assets amounted at that time to $51.300.75 and she took one note payable to herself for $34,200.50 and one note to herself as guardian for $17,100.25. Upon the assumption that she was a member of the firm the note which she took to herself was less than her personal interest in the partnership; and she had a

good title to the note, and a lawful right to dispose of the same. It is not seriously contended that if the finding be sustained, that she was a member of the firm, that the plaintiff, as administrator of her husband, has any standing for the maintenance of this action.

But it is equally clear that the action must fail if we assume that she was not a member of the firm, and that the only interest she had in the firm property on the first day of January, 1876, was in some or all of her capacities as administratrix, widow, heir of her deceased daughter, and guardian of her surviving daughter. Then she was beneficially interested in one-half of the firm property, and her daughter Julia in the other half. All the debts of the estate having been paid within a year after the death of her husband, there was no one interested in the estate on the first day of January, 1876, and during the eight previous years but herself and her daughter. No one else could call her to account or question any of her acts. During that time it must be deemed and held that the partnership was carried on and managed for the benefit of herself and daughter, representing the one-third interest therein, and the other partners; and on the first day of January the one-third interest by operation of law and the acts of the parties had ceased to belong to her husband's estate, had been separated therefrom, and absolutely belonged to her and her daughter, and no other human being had any interest therein. But for her daughter she could have dealt with that interest in any way she saw fit; she could have sold or assigned or given it away, or bequeathed it, and the title thereto would have passed, and being the guardian of her daughter she was perfectly competent at any time to convey a good title to the whole of the interest. (*Hasbrouck* v. *Hasbrouck*, 27 N. Y. 182; *Sage* v. *Woodin*, 66 id. 578.)

It was not necessary for her at that time, nine years after the death of her husband, during all of which time the partnership, as to the one-third interest, had been carried on for the benefit of herself and her daughter, and that interest had been by her exclusively appropriated to the use of herself

and her daughter, to act or assume to act as administratrix in making the transfer. It was sufficient for her to act in her individual capacity and as guardian of her daughter to convey a perfect title. And hence the proceeds of that sale, in the form of the two notes, never became part of her husband's estate, and this plaintiff, as administrator of the estate, has no right to claim the same or maintain any action in reference thereto.

But still further; if we assume that this sale was made by her as administratrix, and that she was bound to make it and could make it only in that capacity, the result is still the same. Having sold the property and taken these notes therefor, she had the right to divide the same between herself and her daughter. If she had received money upon the sale for the whole purchase-price, and had set apart half of it for her daughter and half of it for herself, the division would have been complete, and the property so divided would no longer have belonged to or been part of the estate of Harmon L. Wilber. It is the duty of an administrator to divide the estate he holds as such among those entitled thereto according to law; and the debts having been paid, no one can complain of a division of the estate among those entitled thereto according to their respective rights. On this sale she took and set apart to her daughter the one note as her share, and that note was subsequently delivered to the daughter, and she retained the same and had the benefit thereof. The other note she took to herself as her own individual share of her husband's estate. While, upon the assumption that she was not a member of the firm, that note was more than her interest in the firm property, it does not appear to be more than her share of the property then sold and of that which she had previously received as the proceeds of the firm business. In the division of the property she made on the 3d day of May, 1879, she gave her daughter more than one-half, so that it cannot be said that the whole of the note given to the defendant was not at that time, as between her and her daughter, her property. By what took

place at the time of the sale in 1876, and subsequently thereto and on the 3d day of May, 1879, that note ceased to be part of the estate of Harmon L. Wilber, and she was entitled to dispose of the same as she willed.

This plaintiff has no right to question the gift which Mrs. Wilber made to the defendant. There is no rule of law which prohibits an administratrix thus situated from dividing up the estate, and appropriating a portion thereof to herself and a portion to the other parties interested. In this case her daughter Julia, who afterwards intermarried with the plaintiff, could have questioned the disposition of the property, or the plaintiff, as administrator of Harmon L. Wilber, could investigate her conduct, and ask for an accounting from her administrator in reference to the property which she took and disposed of. But this plaintiff, as administrator of Harmon L. Wilber, cannot come into court affirming the sale and then claim that this note, taken to Mrs. Wilber and by her disposed of as her own, is part of the estate of Harmon L. Wilber. It is a sufficient answer to this action that she had some interest in that note, and assumed to have the entire interest, and, therefore, it cannot be said that the whole of that note belonged to the estate of Wilber, and his administrator cannot repudiate the gift made by her.

We have not deemed it very important to scrutinize the evidence as to the gift of the note. While we find it ample to sustain the findings of the referee, it is a sufficient answer to the plaintiff's contention, that even if the gift was, for any reason, invalid, there is no foundation for the maintenance of this action to recover the note.

All we have said with reference to the note applies with equal force to the bonds, and as to them there is also entire absence of proof that they ever belonged to the estate of Harmon L. Wilber.

We think the judgment should be affirmed, with costs.

All concur except RUGER, Ch. J., not sitting.

Judgment affirmed.